# EXHIBIT A


**Bank of America**

## LEGAL ORDER PROCESSING

### SUMMONS AND COMPLAINT REFERRAL

**TO:**  ANDREW M. BOTT
Associate General Counsel
Bank of America
**CA5-705-08-01**
555 California St., 8th Floor
San Francisco, Ca. 94104-1503
(415) 622-6041

**FROM:**  Legal Order Processing
*March 4, 2010*
*G. GARNSEY  315-738-5889*
*NY 7-501-01-16*

**Date Bank Served:**    *3/1/10*
**Served On:**           *BANK OF AMERICA / BOSTON, MA*
**How Serve**            *UNKNOWN*
**Case Name:**           *DORENE AMBROSE VS: BANK OF AMERICA*
**LTS Case #**           *U030410001120*
**NOTES AND COMMENTS**

_____
_____

**If we were unable to locate customer:** (List systems/applications that were searched and/or other steps taken to find the customer) _____
_____
_____

LEGAL DEPARTMENT
RECEIVED
MAR 05 2010
SAN FRANCISCO.
BANK OF AMERICA, N.A.

**CONFIDENTIAL – ATTORNEY / CLIENT PRIVILEGE**

Ind ex - NELOP

Legal Documents

Bank Of America

Fax   617- 310- 2751

Phone   1- 515-738- 5630

Mail Stop Ny7- 501-01-17

Date Received _____

Plantiffs Name _____

Vs _____

Defendents Name

Number of Pages _____

Regular Mail

Certified Mail

In Person

## Commonwealth of Massachusetts
### County of Norfolk
### The Superior Court

CIVIL DOCKET # NOCV2010-00135-C
Courtroom CtRm 20

RE: **Ambrose v Bank of America**
TO:

Barry D Greene, Esquire
Portnoy & Greene PC
687 Highland Avenue
Needham, MA 02494

### SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **11/13/2011**.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 04/22/2010 | 04/22/2010 | |
| Response to the complaint filed (also see MRCP 12) | | 05/22/2010 | |
| All motions under MRCP 12, 19, and 20 | 05/22/2010 | 06/21/2010 | 07/21/2010 |
| All motions under MRCP 15 | 05/22/2010 | 06/21/2010 | 07/21/2010 |
| All discovery requests and depositions served and non-expert depositions completed | 11/18/2010 | | |
| All motions under MRCP 56 | 12/18/2010 | 01/17/2011 | |
| Final pre-trial conference held and/or firm trial date set | | | 05/17/2011 |
| Case shall be resolved and judgment shall issue by **11/13/2011** | | | 11/13/2011 |

- The final pre-trial deadline is <u>not the scheduled date of the conference</u>.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 01/22/2010

Walter F. Timilty
Clerk of the Court

Telephone:

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                          SUPERIOR COURT
                                                      NORFOLK DIVISION
                                                      CIVIL ACTION
                                                      NO. NOCV2010-00135-C

)
DORENE AMBROSE,            )
                           )
        Plaintiff          )
                           )
v.                         )
                           )
BANK OF AMERICA,           )
                           )
        Defendants         )
                           )

## VERIFIED COMPLAINT

### PARTIES

1. Plaintiff, Dorene Ambrose is an individual of 30 King Street, Cohasset, Massachusetts.

2. Defendant is Bank of America, with a corporate office located at Simi Valley, CA.

3. On January 26, 2006 the Plaintiff entered into a loan transaction with Countrywide Funding Corporation for the refinance of her primary residence. The loan amount was in the amount of $941,250.00 (hereinafter referred to as Loan #1).

4. On March 17, 2006 the Plaintiff entered into a second loan transaction in the amount with Countrywide Funding Corporation in the amount of $49,000.00 (hereinafter referred to as Loan #2).

5. At the time of both loan transactions Countrywide Funding Corporations had an office located at 350 Myles Standish Blvd, Taunton, MA. Matthew Walsh (hereinafter referred to as Walsh) was an employee, agent or servant of Countrywide Funding Corporation.

6. Walsh never met with the Plaintiff. The initial contact came from Walsh to my client's husband, Anthony Ambrose (hereinafter referred to as Mr. Ambrose). The telephone call was a "cold call" that Walsh initiated to Mr. Ambrose. Mr. Ambrose, who had sought financing from other sources, was previously turned down by three other lenders. After knowing this Walsh persisted in telling Mr. Ambrose that he would be able to get him a loan through Countrywide.

7. In the process of attempting to get the loan Mr. Ambrose was to be the borrower. In the attempt to secure the loan two problems arose. One problem was that the property's appraisal came in too low and then the second problem was that Mr. Ambrose's credit scores were too low. Mr. Walsh had the property re-appraised to a higher value and, once he found out that Mr. Ambrose's credit scores were too low he substituted the Plaintiff as a borrower instead of Mr. Ambrose. At the time of the transactions the Plaintiff enjoyed excellent credit. However she did not have a large enough income to support the size of the loans contemplated by Walsh.

8. Mr. Walsh only secured the social security number from the Plaintiff. At no time did he (Walsh) take an application from the Plaintiff notwithstanding that he might have completed an application on his own accord but without the Plaintiff's review thereof.

9. The loan closed on January 26, 2006 and funded on January 31, 2006. Out of the loan proceeds $705,948.24 was paid to Washington Mutual and $229,617.03 was paid to South Shore Bank. The debt to Washington Mutual was to pay off the existing first mortgage and the amount paid to South Shore Bank was to pay off a loan actually owed by Mr. Ambrose and the Plaintiff in connection with a business venture. In addition two other business creditors of Mr. Ambrose were paid in the amount of $31,500.00 to settle those debts. Thus, in total the Plaintiff took $261,100.00 out of the equity in her home in order to close this transaction.

10. On the day of the closing the Plaintiff appeared at the law offices of Triffletti & Costa P.C. where she went through the process of closing the loan. All of the documents were executed but with very little regard was given to the Plaintiff a full explanation to the Plaintiff of the content of the documents that she was signing. A closing attorney is required to fully explain the loan documents on behalf of a lender.

11. The loan product that she received was a negative amortization loan with what has been characterized as a "teaser rate" for the first year of the loan. Thus, her loan would never reduce in size but would, instead, increase for a period of time.

12. In March of 2006 the Plaintiff was approached by Countrywide to take out a HELOC second mortgage in the amount of $49,400.00 (Loan #2). She was granted the loan without any inquiry of what her financial circumstances were at that time. That loan (#133806353) closed in March of 2006.

13. After a period of time the Plaintiff could not make payments on her loan and attempted to seek a modification of her loan. She met with no success in this effort but to the contrary was told that her loan payment would increase and not decrease.

14. In an effort to reduce the debt that she owed to Countrywide she sought to sell a vacant lot next to her house that is secured to Countrywide as part of both loans. This lot is a separate buildable lot in the Town of Cohasset that could be sold separately and that, at the time a sale of that lot would have generated a substantial amount of money to reduce the Countrywide debt. Countrywide insisted on her paying $500.00 as a nonrefundable fee to a lawyer in New York but that there was no guarantee that Countrywide would go along with the proposal. As part of that process the Plaintiff also paid $2,500.00 to an engineer to have the lot tested and approved as a building lot. Countrywide never responded to her request for a partial release. Thus, the Plaintiff lost the ability to reduce her debt to Countrywide in a very significant and meaningful amount.

15. Countrywide Funding Corporation, to the best of Plaintiff's knowledge, information and belief, became part of Bank of American, the Defendant herein. Prior to Countrywide becoming part of the Defenant, it began a foreclosure proceeding against the Plaintiff. In response to this action the Plaintiff sought the services of a mortgage and debt consulting company called N.A.C.A. It was shortly thereafter that Countrywide postponed the auction or perhaps cancelled the same. It is unclear what action Countrywide took in connection with regard to the auction or where the matter stands at this time.

16. Within the last two months of the date hereof the Plaintiff reviewed her loan documents with her counsel. The Plaintiff was made aware that the loan application in both loans was significantly faulty in that it substantially overstated her income, her assets, and her dependents. It appears that Walsh put down numbers on the application in such a way as to generate a loan for the Plaintiff regardless of whether or not the representations were true or false. At the time of closing on both loans the Plaintiff did not realize that this information was contained in the loan application at the time she did both closing. Walsh was never authorized to put inaccurate into the Plaintiff's loan applications. Walsh knew that she was married to Mr. Ambrose and, at the time of the closing my client was with her children. In addition, the 1003 also listed her as the owner of a restaurant. Walsh knew that Mr. Ambrose was the owner of the restaurant and not the Plaintiff. The Plaintiff was duped into believing that she was getting a loan from a reputable organization and that the proceeds of the loan would enable her to be in a better position.

17. The Plaintiff give up $261,100 of her equity in her home in order to satisfy debts that were not her debts because of the acts of the Defendant. Additionally the Plaintiff was not able to mitigate her loses by selling off a parcel of land that could have generated a significant amount of money to reduce her debt.

3

## COUNT I
### VIOLATION OF M.G.L. CHAPTER 93a

18. The Plaintiff restates paragraphs 1-17 as if fully restated herein.

19. The Plaintiff says that the Defendant engaged in lending conduct that is predatory in violation of both state and federal law. Its conduct in granting a loan in this fashion and its further conduct rise to the level of shocking the conscious as being both unfair and deceptive. The actions of the Defendant by its agent, servant or employee amount to deceptive practices under Massachusetts General Laws, Chapter 93A. As a result my client's equity in her property was stripped from her leaving her with nothing.

20. Wherefore the Plaintiff demands judgment against the Defendant in an amount as shall be determined by this Court and that said amount be trebled under the provisions of M.G.L. 93A. together with interest, cost and attorney fees.

## COUNT II
### FRAUD AND DECEIT

21. The Plaintiff restates paragraphs 1-17 as if fully stated herein.

22. The Plaintiff says that the actions of the Defendant were fraudulent and deceitful in that they caused her to execute documents created by their agents, servants, or employees that were by their very nature fraudulent and deceitful to their agents, servants, or employees.

Wherefore the Plaintiff demands judgment against the Defendant together with interest, court costs, and attorney fees.

## COUNT III
### EQUITABLE RELIEF

23. The Plaintiff restates paragraphs 1-17 as if fully stated herein.

24. The Plaintiff states that part of her remedy sought herein should be that of an equitable remedy. Plaintiff requests that this Court order that she be allowed to sell off the extra lot described in paragraph 14 hereof free and clear of any mortgages to the Defendant and that the proceeds of the sale thereof should be placed into an escrow account until this Court shall determine who shall be entitled to the proceeds thereof.

The Plaintiff:
By her Attorney:

_____
Barry D. Greene, Esq.
BBO # 209840
Portnoy and Greene, P.C.
687 Highland Avenue
Needham, MA 02494
Telephone: 781-449-6050
Fax:          781-449-4574
Email: barrygreene@portnoygreene.com

## VERIFICATION OF COMPLAINT

I, Dorene Ambrose, hereby swear under the pains and penalties of perjury that the facts stated in this Complaint are true and accurate.

_____
Dorene Ambrose

January 19, 2010

5